UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARRITA MURPHY, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 03-02414 (RCL) |
| ) | |
| **INTERNAL REVENUE SERVICE, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' motion to dismiss for lack of jurisdiction over the Internal Revenue Service (IRS) as a proper party to this suit, as well as defendants' motion for summary judgment and plaintiff's cross motion for partial summary judgment. FED. R. CIV. P. 12(b)(2), FED. R. CIV. P. 56(c). The defendants move to dismiss because Congress has not explicitly authorized the IRS as an agency to be sued *eo nomine*. Blackmar v. Guerre, 342 U.S. 512, 515 (1952). The issue before the court regarding the summary judgment and partial summary judgment motions dispute is whether or not plaintiff's damages were received "on account of physical injuries or physical sickness" under the 1996 amended definition of Internal Revenue Code § 104(a)(2). Further, the parties dispute whether § 104(a)(2) is constitutional under the Fifth Amendment and Sixteenth Amendment. The defendants submitted a motion and memorandum in support of their position. Plaintiff submitted a memorandum in opposition to the defendants' motion and supporting a cross motion. Defendants subsequently filed a motion in opposition to plaintiff's motion for summary

judgment, and plaintiff accordingly provided a reply memorandum.  Upon consideration of the parties' filings, the applicable law, the Federal Rules of Civil Procedure and the facts of this case, the Court finds that the defendants' motion to dismiss will be DENIED.  Defendant's motion for summary judgment will be GRANTED and plaintiff's cross motion for partial summary judgment will be DENIED.

## I. BACKGROUND

Plaintiffs Marrita Murphy and Daniel Leveille filed complaints against the New York National Guard, alleging that their former employer discriminated against them by engaging in conduct that violated six whistle blower environmental statutes.  (Leveille et al. v. New York Air National Guard, 1995 WL 848112, *3 (DOL Off, Adm. App.).[1]  Each of the whistle blower statutes provide for "compensatory damages."  The Toxic Substances Control Act, 15 U.S.C. §2622 (1994); The Safe Drinking Water Act, 42 U.S.C. §300j-9(I) (1994); The Clean Air Act, 42 U.S.C. §7622 (1994); The Solid Waste Disposal Act, 42 U.S.C. §6971 (1994); The Clean Water Act, 33 U.S.C. §1367 (1994); The Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9610 (1994).

During the trial, Dr. Edwin N. Carter and Dr. Barry L. Kurzer testified that plaintiff's injuries were the result of NYANG's conduct.  Dr. Carter testified that Murphy sustained "somatic" and "emotional" injuries, including a condition known as "bruxism," or teeth grinding.  (Aff. Dr. Carter.)  Murphy had no previous history of bruxism, but was initially treated for the condition in March 1994, when Dr. Kurzer immediately recommended a bite guard.  (Aff. of Dr. Kurzer, ¶5-6.)  Murphy continues to experience pain and tooth damage from the bruxism.  (Id. at

---

[1] Marrita Murphy is also known as Marrita Leveille in portions of this litigation.

¶ 13-15.)  Additionally, the Administrative Law Judge noted and the Administrative Review Board confirmed that Murphy suffered from other "physical manifestations of stress" including "anxiety attacks, shortness of breath, and dizziness."  (Leveille v. New York Air National Guard, Recommended Decision and Order at 6 (ALJ Feb. 9, 1998.)

The Secretary of Labor ruled in favor of Murphy on December 11, 1995, and dismissed Daniel Leveille's complaint due to untimely filing.  (Id.)  Shortly thereafter, in 1996, Congress amended 26 U.S.C. § 104(a)(2), the statute governing plaintiff's potential exclusion from taxation, limiting the exclusion to compensatory damages received on account of "physical injuries and physical sickness."  Prior to 1996, § 104(a)(2) required only personal injury or sickness to qualify for the tax exemption.  On October 25, 1999, Murphy was awarded $70,000 in damages – $45,000 for mental pain and anguish, and $25,000 for damage to her professional reputation.  (1999 WL 966951, *5 (DOL Adm. Rev.Bd.))  The Department of Labor Decision and Order on Damages stated that "[b]y authorizing the award of compensatory damages, the environmental statutes have created a 'species of tort liability' in favor of persons who are the objects of unlawful discrimination."  (Decision and Order on Damages, p. 4 (Oct. 25, 1999).)

Murphy then filed her 2000 tax return on April 11, 2001, reporting the $70,000 she received in compensatory damages.  (Compl. ¶ 6,7.)  Plaintiff later sought a refund of the compensatory damages plus interest on April 15, 2001, December 25, 2001, and October 8, 2002, asserting that such damages were exempted from taxation under 26 U.S.C. § 104(a)(2). (Compl. ¶ 8, 9, 10, 20.)  The IRS denied plaintiff's claim for a refund, stating that plaintiff did not demonstrate that the compensatory damages were attributable to physical injury or physical sickness.  (Id. at ¶ 14.)  Plaintiff requested an appeal of this decision on January 16, 2003, and

when the Appeals Office did not respond within 180 days, plaintiff filed this action on November 21, 2003.  (Compl. at 1, 15-17.)

## II. ANALYSIS

**A.  Motion to Dismiss**

    1.  The IRS is a proper party to this suit under the Administrative Procedure Act.

5 U.S.C. § 702(a) (2000) states that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review," so long as the relief sought is other than monetary damages.  More specifically, "[t]he district courts have original jurisdiction of "[a]ny civil action against the United States for the recovery of an internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws." 28 U.S.C. § 1346 (1997); United States v. Williams, 514 U.S. 527, 532 (1995).

    Jurisdiction over the United States in federal taxation cases was extended to administrative agencies in 1973.  5 U.S.C. § 703 (1973).  The revised statute states that an "action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer" and that such action "is subject to judicial review in civil...proceedings for judicial enforcement." Id. (emphasis added).  5 U.S.C. § 703 changed the state of the law under Blackmar v. Guerre, 342 U.S. 512, 515 (1952), which held that administrative agencies could not sue or be sued unless Congress authorized the particularly agency as a potential party to the suit.  See Baumohl v. Columbia Jewelry Co., 127 F.Supp. 865

(D. Md. 1955); O'Connell v. IRS, 93 A.F.T.R.2d (RIA) 1841; M&M Transp. Co. v. U.S. Industries, Inc., 416 F.Supp. 865 (1976).

Current case law supports the § 703 change. In Sarit v. Drug Enforcement Admin., 759 F.Supp. 63, 69 (D.R.I. 1991) defendants' claimed that the Drug Enforcement Administration could not be sued *eo nomine* because was a federal agency. The court disagreed, explaining that "[t]his . . . is not the case when jurisdiction is viewed in light of the Administrative Procedure Act." The Sarit court also referenced the amended language of § 703, noting that "the previous law under Blackmar v. Guerre . . . was that suit could not be maintained against an agency. The amendment gets rid of Blackmar." Id. (citations omitted). Similarly, in Blassingame v. Secretary of Navy, 811 F.2d 65 (2d. Cir. 1987), the court clarified that "[t]he rule that a federal agency cannot itself be sued . . . no longer holds." See also B.K. Instrument Inc. v. United States, 715 F.2d 713, 724-25 (2d. Cir. 1983).

In this case, the IRS is a proper party to the suit. Under 5 U.S.C. § 702(a), if a party suffers a legal wrong by an agency action, such a party is entitled to bring her case before this Court as long as she seeks relief other than monetary damages. Plaintiff claims violations of her rights Fifth and Sixteenth Amendment rights, and seeks injunctive and declaratory relief, thus satisfying 5 U.S.C. § 702(a). Further, this court has jurisdiction over plaintiff's action because it involves a claim of an illegally collected federal tax revenue. 28 U.S.C. § 1346 (1997). Finally, plaintiff properly named the IRS as party to under 5 U.S.C. § 703 (1973), which codified the principle that such a suit may be brought against a government agency.

**2. Plaintiff exhausted all remedies prior to filing suit in District Court.**

A party aggrieved by an administrative agency action must exhaust available administrative remedies before seeking judicial relief.  Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938); McKart v. United States, 395 U.S. 185, 193 (1969); Department of Transportation. v. Public Citizen, 541 U.S. 752 (2004).  The rationale behind such a requirement is that "[t]he exhaustion doctrine guarantees administrative autonomy and efficiency, and ensures that administrative agencies are afforded an opportunity to address their own error without judicial intervention."  Sharps v. United States Forest Service., 28 F.3d 851, 854 (8th Cir. 1994).

Several specific requirements exist for a tax dispute case.  First, the litigant must "pay first and litigate later."  Flora v. United States, 362 U.S. 145, 164 (1960).  Furthermore, all civil actions for a refund are governed by 26 U.S.C. § 7422(a), which requires that any suit involving an "erroneously or illegally assessed or collected" internal revenue tax may not be "maintained in any court" until a claim for a refund or credit is filed with the Secretary.

In this case, plaintiff complied with all applicable requirements for exhaustion of remedies.  First, plaintiff paid her taxes up front, in accordance with the "pay first and litigate later" requirement.  Flora v. United States, 362 U.S. 145, 164.  Second, plaintiff filed three amended tax returns on April 15, 2001, December 25, 2001, and October 8, 2002, respectively, and an appeal on December 18, 2002.  When plaintiff did not receive a response to her administrative appeal after 180 days, she filed this action on November, 21, 2003.  Therefore, plaintiff followed proper procedures in first paying her taxes and then disputing the IRS' assessment of her gross income, and made multiple claims within the IRS prior to filing suit with

this Court. Accordingly, plaintiff effectively exhausted all other remedies and her case is properly before this Court.

## B. Summary Judgment

### 1. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact. Fed. R. Civ.P. 56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it will affect the outcome of the case. Id. Moreover, a moving party is entitled to summary judgment as a matter of law when the law supports the moving party's position. See Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Once the moving party files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot establish a genuine issue of material fact exists through "conclusory allegations" or "unsubstantiated assertions." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Any factual assertions contained in the declaration in support of a motion will be accepted by the Court as true unless plaintiff submits his own declarations or other documentary evidence contradicting the assertions in the attached declarations. See Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

**2. Plaintiff's damages are income, and are taxable unless exempted by § 104(a)(2) of the Internal Revenue Code.**

The Sixteenth Amendment established that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. CONST. AMEND XVI. "Gross income" is broadly defined, for purpose of federal income taxation, as "all income from whatever source derived." 26 U.S.C. §61(a); Commissioner v. Banks, 543 U.S. ___ (2005); Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). The Supreme Court defined income in Eisner v. Macomber, 252 U.S. 189, 207 (1920) as "the gain derived from capital, from labor, or from both combined." While this definition is widely quoted, it was not intended to provide a "touchstone to all future gross income questions." Glenshaw Glass, 348 U.S. 426, 431 (1955); Roemer v. Commissioner, 716 F.2d 693, 696 n.2 (9th Cir. 1983); Prescott v. Commissioner, 571 F.2d 1287, 1293 (8th Cir. 1977). Furthermore, in interpreting the definition of income, courts follow the "default rule of statutory interpretation that exclusions from income must be narrowly construed." United States v. Burke, 504 U.S. 244, 248 (1992) (Scalia, J., concurring in judgment, Souter, J., concurring in judgment); see United States v. Centennial Savings Bank FSB, 499 U.S. 573, 683-84 (1991); Commissioner v. Jacobson, 336 U.S. 28, 49 (1949).

Congress codified one such income tax exception through 26 U.S.C. § 104(a)(2). Prior to 1996, the statute provided that gross income does not include "the amount of any damages (other

than punitive damages) received . . . on account of <u>personal</u> injury or sickness.[2]  <u>Id.</u> (emphasis added.)  Therefore, prior to the 1996 amendment, "[t]he reference to personal injury did not include purely economic injuries but did embrace 'nonphysical injuries to the individual, such as those affecting emotion, reputation, or character.'" <u>Polone v. Commissioner</u>, 2003 WL 22953162, T.C.M. (RIA) 2003-339 (T.C. 2003) (quoting <u>Burke</u>, 504 U.S. at 235 n.6.).  As amended in 1996, the statute altered the exemption requirements to compensatory damages "on account of <u>physical injuries or physical sickness</u>."  (<u>Id.</u> (emphasis added).)

The House Report provides further detail regarding the change in language.  The report clarifies the meaning of "physical" by explaining that "[i]f an action has its origin in a physical injury or physical sickness, then all damages. . . that flow therefrom are treated as payments received on account of physical injury or physical sickness . . . ." 104 H. Rpt. 737.  The report further explains that "emotional distress is not considered a physical injury or physical sickness," and furthermore, any damages based on "employment discrimination or injury to reputation accompanied by a claim of emotional distress" do not fall under the § 104(a)(2) exception.  <u>Id.</u>  The report also notes that "the exclusion from gross income applies to any damages received based on a claim of emotional distress that is attributable to a physical injury or physical sickness."  <u>Id.</u>

To determine whether § 104(a)(2) applies, a taxpayer must satisfy the two prong test established in <u>Commissioner v. Schleier</u>, 515 U.S. 323, 336-37 (1995).  The first prong requires a

---

[2] § 104(a)(2) originates from The Revenue Act of 1918, ch. 18, 40 Stat. 1057, § 213(b)(6). The original rationale for the rule was that damages for personal injuries could not be considered a "gain," and therefore, were not considered income.  <u>See</u> H.R. Rep. No.767 65th Cong., 2d Sess. 9-10 (1918)(1939-1 C.B. (pt. 2) 86, 92).

taxpayer to establish that damages were received through a tort or tort-like action.  Id. at 335; Burke, 504 U.S. at 237.  The second prong requires a taxpayer to establish that the damages received were "on account of" a personal injury.  Schleier, 515 U.S. at 336.  However, the 1996 revision to § 104(a)(2) adds the additional requirement that such injuries be physical in nature.

Plaintiff's compensatory damages satisfy the first prong of the Schleier test.  A tort-like cause of action includes  "the traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages."  Burke, 504 U.S. at 239.  Moreover, the six environmental statutes from which plaintiff's claim arose provide for "compensatory damages."  The Toxic Substances Control Act, 15 U.S.C. § 2622 (1994); The Safe Drinking Water Act, 42 U.S.C. § 300j-9(I) (1994); The Clean Air Act, 42 U.S.C. § 7622 (1994); The Solid Waste Disposal Act, 42 U.S.C. § 6971 (1994); The Clean Water Act, 33 U.S.C. § 1367 (1994); The Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9610 (1994).  Finally, the DOL Decision and Order on Damages stated that "[b]y authorizing the award of compensatory damages, the environmental statutes have created a 'species of tort liability' in favor of persons who are the objects of unlawful discrimination." (Decision and Order on Damages, p. 4 (Oct. 25, 1999).)  In this case, plaintiff received compensatory damages for emotional distress and damage to reputation, fitting squarely within the definition of a tort or tort-like action.  DOL reaffirmed this finding through specifically stating that the damages awarded were tort-like during the award of plaintiff's damages.  Therefore, the first prong of the Schleier test is satisfied.

However, the facts of this case do not satisfy the second prong of Schleier. First, plaintiff received $25,000 for damage to her professional reputation.  (1999 WL 966951,

*5 (DOL Adm. Rev.Bd.) )  The House Report for the 1996 version of § 104(a)(2) explicitly stated that damages based on "employment discrimination or injury to reputation accompanied by a claim of emotional distress" do not fall within the protection of the tax exemption.  104 H. Rpt. 737.  Because plaintiff's $25,000 of compensatory damages was based on damage to Murphy's professional reputation, this award is not specifically exempted by statute, and thus falls within the broader definition of taxable income.  Glenshaw Glass, 348 U.S. at 431 (noting that the definition of income may include "accessions to wealth.")

      Second, plaintiff received $45,000 in damages awarded for mental pain and anguish.  Pertaining to emotional distress, the House Report states that "emotional distress is not considered a physical injury or physical sickness," but that "the exclusion from gross income applies to any damages received based on a claim of emotional distress that is attributable to a physical injury or physical sickness."  104 H. Rpt. 737. (emphasis added).  Here, Murphy's mental anguish manifested into a physical problem, bruxism, but this was only a symptom of her emotional distress, not the source of her claim.  Plaintiff's emotional distress is not "attributable to her physical injury; in fact, it is the other way around.  Because the statute clearly provides damages must be received "on account of personal physical injury or physical sickness," and because mental pain and anguish and damage to reputation are not physical injuries, plaintiff's emotional distress damages are not included within the statutory exemption under § 104(a)(2).  Therefore plaintiff's entire compensatory damages award of $70,000 is lawfully taxed under § 104(a)(2).

### 3. The revised version of § 104(a)(2) was not applied retroactively.

Plaintiff asserts that § 104(a)(2) was applied retroactively to the compensatory damages, thus violating plaintiff's due process rights under the Fifth Amendment and conflicting with the presumption that legislation is not retroactive unless Congress expresses clear intent. (P. Cross Motion for Partial Sum. Judgment at 32.) Defendants assert that the statute plainly applies to income received after the effective date and, therefore, § 104(a)(2) is not retroactively applied.

The evidentiary record of plaintiff's case was closed in 1994. In 1995, the Secretary of Labor ruled in favor of plaintiff's discrimination complaint. In 1996, Congress amended § 104(a)(2) requiring physical injury or physical sickness for the exception to apply. The prior version of § 104(a)(2) required only personal injury or sickness. However, the plaintiff was awarded compensatory damages in 1999 after the 1996 version of § 104(a)(2) took effect. Therefore, because the plaintiff's damages award took place after the amendment, the 1996 version of § 104(a)(2) was properly applied in this instance.

While the Fifth Circuit applied § 104(a)(2) retroactively in Dotson v. United States, 87 F.3d 682 (5th Cir. 1996), the Court did so because the settlement took place prior to the revision in the tax code. Here, the award was not made until 1999, three years after the tax code revision. Therefore, as the facts of this case maintain a different timeline than the facts of Dotson, the 1996 version of § 104(a)(2) was properly applied to plaintiff's award that was assessed and received several years after the statute's amendment.

**4. § 104(a)(2) remains constitutional after the 1996 amendments.**

**a. Fifth Amendment due process clause and takings clause**

"In general, a Federal tax law is not violative of the Due Process Clause of the Fifth Amendment of the U.S. Constitution unless the statute classifies taxpayers in a manner that is arbitrary and capricious." Hamilton v. Commissioner, 63 T.C. 601, 606 (1977). Furthermore, courts may only intervene under a due process claim if "the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property, that is, a taking of the same in violation of the Fifth Amendment, or what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion." Brushaber v. Union Pac. RR, 240 U.S. 1, 24-25 (1916). Historically, the courts "never used the [substantive] due process clause to regulate federal income tax," and have showed similar restraint under procedural due process claims except for cases involving "specific classifications" or inadequate administrative processes. Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, Volume 1, Third Edition (1999) (citing Black v. United States, 534 F.2d 524 (2d Cir. 1976); McGlotten v. Connally, 338 F. Supp. 448 (D.D.C. 1972)).

The facts of this case do not provide a strong basis for a due process challenge under the Fifth Amendment. Members of Congress did not arbitrarily nor capriciously alter the applicability of § 104(a)(2) through the 1996 amendment. Moreover, in a similar challenge of the constitutionality of § 104(a)(2), The Court of Appeals for the Sixth Circuit found the revised statute constitutional. The Court noted that because the statute does not preserve a fundamental right, "the distinction that it creates is constitutional as long as it bears a rational relationship to a

13

legitimate government purpose." Young v. United States, 332 F.3d 893, 895-96 (3rd. Cir. 2003) (citing Regan v. Taxation With Representation of Washington, 461 U.S. 540, 547 (1983)). Further, the legislature "is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509 (1937).

In this case, as in Young, the legislative history of § 104(a)(2) provides that Congress intended to clarify the state of the law, as well as decrease litigation for cases that do not involve physical injury or physical sickness. H.R. Conf. Rep. No. 104-737, at 300, *reprinted in* 1996 U.S.C.C.A.N. 1677; H.R. Rep. No. 104-586, at 142-43. Clarifying the tax code and decreasing litigation satisfy the minimal requirement of a "rational basis," and therefore § 104(a)(2) does not violate the due process clause under the Fifth Amendment.

Plaintiff's argument that the disputed taxation violates the Takings Clause is also without merit. Courts generally reject the argument that taxing provisions can be classified as "taking of property without due process of law." See Freeman, 2001 WL 1140022, T.C.M. (RIA) 2001-254 (Tax Ct. 2001); see also Coleman v. Commissioner, 791 F.2d 68, 70 (7th Cir. 1986); Van Sant, 98 A.F.T.R.2d 2002-302, *7 (D.D.C. 2001). The Seventh Circuit clarifies the meaning of taking in Coleman, stating that taxation does indeed "take" income, "but this is not the sense in which the constitution uses 'takings.'" Id. The Second Circuit further explained that because Article I, section 8, clause 1 of the U.S. Constitution granted Congress the power to tax before the passage of the Sixteenth Amendment, its passage "did no more than remove the apportionment requirement of Article I, §2, cl. 3, from taxes on 'incomes, from whatever source derived.'"

Therefore, although taxation on damages that are not exempted under the revised version of § 104(a)(2) may appear to be a "taking" by the government, the constitutional provision was not intended, nor should it be extended, to cover plaintiff's situation in this case.

### b. Sixteenth Amendment

Article I, § 8 of the U.S. Constitution delegates to Congress the power "to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform through the United States." Article I, § 9 implements a proportionality requirement, stating that "[n]o Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken." U.S. CONST. art. I, § 9. This apportionment requirement led the Supreme Court to hold the 1894 income tax law unconstitutional in Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601 (1895), which later prompted the passage of the Sixteenth Amendment. Under the Sixteenth Amendment "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. CONST. amend. XVI. The Sixteenth amendment therefore effectively eliminated the apportionment requirement for income tax.

Plaintiff asserts that the 1996 amendments to § 104(a)(2) are unconstitutional because the statute (a) imposes a direct tax on personal injuries which cannot be classified as income, (b) taxes compensation despite the "in lieu of what?" test, and (c) conflicts with the constrained definition of income established under the Sixteenth amendment.

15

As previously discussed, "gross income" is broadly defined by statute as "all income from whatever source derived." 26 U.S.C. §61(a).  The Supreme Court has broadened its interpretation from "the gain derived from capital, from labor, or from both combined," as established in 1920 in <u>Eisner,</u> to a more all-encompassing standard, including "all economic gains not otherwise exempted." <u>Eisner</u>, 252 U.S. at 207; <u>Commissioner v. Banks</u>, 543 U.S. ___ (2005).  In this case, plaintiff argues that § 104(a)(2) assesses a direct tax on personal property rather than a constitutional tax of income.  (P. Cross Motion for Partial Summary Judgment at 31.)  Further, plaintiff asserts that these compensatory damages are not income and therefore they cannot be taxed under the Sixteenth amendment.  While confusion remains within in the law regarding the exact definition of a "direct tax," because of the broad definition of "income" purported by the tax code and the courts' subsequent interpretation thereof, plaintiff's argument fails.

Plaintiff also argues that the disputed damages are not taxable under the "in lieu of what" test established in <u>Raytheon Production Corp. v. Commissioner</u>, 144 F.2d 110 (1st Cir. 1944), *cert. denied* 323 U.S. 779 (1944).  <u>Raytheon</u> directs the inquiry, "in lieu of what were the damages awarded?" <u>Id.</u> at 113.  If what is being taxed can be considered "income," it may be taxed; if it cannot, then it is exempted.  While defendants do not directly respond to this theory, courts have applied the <u>Raytheon</u> test in cases involving settlement, not in cases where damages are awarded by an administrative body.  See <u>Linsey v. C.I.R.</u>, 2004 WL 1052272, U.S. Tax Ct., 2004.  Moreover, the revised language of § 104(a)(2) indicates that only physical injuries and physical sickness are exempted from the definition of "income."  Therefore, anything falling outside this definition is considered income, and is therefore taxable.  <u>Burke</u>, 504 U.S. at 248

(noting that it is the "default rule of statutory interpretation that exclusions from income must be narrowly construed").

Finally, plaintiff asserts that Congress cannot act unilaterally to determine its taxing power, but is restrained by the Supreme Court and the constitutional limitations established under the Sixteenth Amendment. While this is true, the Supreme Court has continually affirmed the broad interpretation of the taxing power and the definition of income. Banks, 543 U.S. at 6; Glenshaw Glass Co., 348 U.S. at 429; Helvering, 309 U.S. at 334. In clarifying the definition of "personal injury" and eliminating injuries based on emotional distress from the exemption, Congress has limited the scope of its taxation power to damages which are not the result of physical injury or sickness. Congress' attempt to clarify the law and decrease litigation is within the boundaries of its limits under the Sixteenth Amendment. See H.R. Conf. Rep. No. 104-737, at 300, *reprinted in* 1996 U.S.C.C.A.N. 1677; H.R. Rep. No. 104-586, at 142-43. Therefore, § 104(a)(2) does not pose a constitutional problem under the Sixteenth Amendment.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be DENIED. Defendants' motion for summary judgment will be GRANTED. Plaintiff's cross-motion for partial summary judgment will be DENIED.

A corresponding Order will issue this date.


Signed by Royce C. Lamberth, United States District Judge, March 22, 2005.